**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF VIRGINIA
ROANOKE DIVISION**

| | | |
|---|---|---|
| **BRYAN S.[1],** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | **Civil Action No. 7:20cv00358** |
| | ) | |
| **KILOLO KIJAKAZI,** [2] | ) | |
| **Acting Commissioner of Social Security,** | ) | |
| | ) | |
| **Defendant.** | ) | |

<u>**REPORT AND RECOMMENDATION**</u>

Plaintiff Bryan S. ("Bryan") filed this action challenging the final decision of the

Commissioner of Social Security ("Commissioner") finding him not disabled and therefore

ineligible for disability insurance benefits ("DIB") under the Social Security Act ("Act").

42 U.S.C. §§ 401–433. Bryan alleges that the Administrative Law Judge ("ALJ") erred by failing

to properly: (1) consider medical opinions; (2) assess his mental impairments; (3) determine his

RFC using a function-by-function analysis; and, (4) assess his allegations regarding his

symptoms.

I conclude that substantial evidence supports the Commissioner's decision in all respects.

Accordingly, I **RECOMMEND GRANTING** the Commissioner's Motion for Summary

Judgment (Dkt. 13) and **DENYING** Bryan's Motion for Summary Judgment (Dkt. 15).

---

[1] Due to privacy concerns, I use only the first name and last initial of the claimant in social security opinions.

[2] Kilolo Kijakazi became the Acting Commissioner of Social Security on July 9, 2021. Pursuant to Rule 25(d) of the Federal Rules of Civil Procedure, Kilolo Kijakazi is hereby substituted for Andrew Saul as the defendant in this case.

## STANDARD OF REVIEW

The court limits its review to a determination of whether substantial evidence supports the Commissioner's conclusion that Bryan was not disabled under the Act.[3] Mastro v. Apfel, 270 F.3d 171, 176 (4th Cir. 2001). This standard of review requires the Court to "look[ ] to an existing administrative record and ask[ ] whether it contains 'sufficien[t] evidence' to support the [ALJ's] factual determinations." Biestek v. Berryhill, 139 S. Ct. 1148, 1154 (2019) (quoting Consol. Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion; it consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." Craig v. Chater, 76 F.3d 585, 589 (4th Cir. 1996) (internal citations omitted). "The threshold for such evidentiary sufficiency is not high." Biestek, 139 S. Ct. at 1154. The final decision of the Commissioner will be affirmed where substantial evidence supports the decision. Hays v. Sullivan, 907 F.2d 1453, 1456 (4th Cir. 1990).

## CLAIM HISTORY

Bryan filed protectively for DIB in July 2017, claiming his disability began on July 8, 2016,[4] due to brain damage, memory loss, and back issues. R. 186–88, 207. Bryan's date last insured was December 31, 2018; thus, he must show that his disability began on or before this date and existed for twelve continuous months to receive DIB. R. 204; 42 U.S.C.

[3] The Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment, which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Disability under the Act requires showing more than the fact that the claimant suffers from an impairment which affects her ability to perform daily activities or certain forms of work. Rather, a claimant must show that her impairments prevent her from engaging in all forms of substantial gainful employment given her age, education, and work experience. See 42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

[4] In his DIB claim, Bryan initially alleged his disability began on June 15, 2013. He later amended his alleged onset date to July 8, 2016 at the February 2019 hearing. R. 16.

§§ 423(a)(1)(A), (c)(1)(B), (d)(1)(A); 20 C.F.R. §§ 404.101(a), 404.131(a). The state agency

denied Bryan's applications at the initial and reconsideration levels of administrative review.

R. 116–26, 128–34. On February 27, 2019, ALJ David Lewandowski held a hearing to consider

Bryan's claims for DIB. R. 36–57. Counsel represented Bryan at the hearing, which included

testimony from vocational expert Robert Jackson. R. 36. On June 11, 2019, the ALJ entered his

decision analyzing Bryan's claims under the familiar five-step process[5] and denying his claim

for benefits. R. 16–30.

The ALJ found that Bryan was insured at the time of the alleged disability onset and that

he suffered from the severe impairments of coronary artery disease with a history of myocardial

infarction ("heart attack"), hypertension, hyperlipidemia, lumbar spondylosis, osteoarthritis of

the hands, cognitive impairment, and major depressive disorder.[6] R. 18. The ALJ determined that

these impairments, either individually or in combination did not meet or medically equal a listed

impairment. R. 19. The ALJ specifically considered listing 1.02 (major joint dysfunction), 1.04

(disorders of the spine), 4.04 (ischemic heart disease), 12.02 (neurocognitive disorders), 12.04

(depressive, bipolar and related disorders), 4.00(H)(1) (other cardiovascular impairments,

hypertension), and 12.00(G) (paragraph C criteria for mental disorder). R. 19–22. The ALJ found

---

[5] The five-step process to evaluate a disability claim requires the Commissioner to ask, in sequence, whether the claimant: (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirements of a listed impairment; (4) can return to his past relevant work; and if not, (5) whether he can perform other work. Johnson v. Barnhart, 434 F.3d 650, 654 n.1 (4th Cir. 2005) (per curiam) (citing 20 C.F.R.§ 404.1520); Heckler v. Campbell, 461 U.S. 458, 460–62 (1983). The inquiry ceases if the Commissioner finds the claimant disabled at any step of the process. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). The claimant bears the burden of proof at steps one through four to establish a prima facie case for disability. At the fifth step, the burden shifts to the Commissioner to establish that the claimant maintains the residual functional capacity ("RFC"), considering the claimant's age, education, work experience, and impairments, to perform available alternative work in the local and national economies. 42 U.S.C. § 423(d)(2)(A); Taylor v. Weinberger, 512 F.2d 664, 666 (4th Cir. 1975).

[6] The ALJ found that Bryan has a medically determinable impairment of diabetes mellitus, however, it is not a severe impairment because "there is no evidence this impairment impacts [Bryan's] ability to work and is controlled by medications." R. 18.

that regarding his mental impairments, Bryan had moderate limitations in understanding, remembering, and applying information and concentrating, persisting, or maintaining pace, and mild limitations in interacting with others and adapting or managing oneself. R. 20–22.

The ALJ concluded that Bryan retained the residual functional capacity ("RFC") to perform a limited range of light work. R. 22. Specifically, Bryan can occasionally perform postural activities, but he can frequently balance and handle and finger. Id. He should avoid concentrated exposure to industrial hazards. Id. He can understand, remember, and carry out simple instructions and perform simple tasks and is expected to be off task less than ten percent of the workday. Id. The ALJ determined that Bryan was unable to perform any past relevant work, but he could perform jobs that exist in significant numbers in the national economy, such as marker, cleaner, and inspector. R. 29. Thus, the ALJ determined that Bryan was not disabled. R. 30. Bryan appealed the ALJ's decision and the Appeals Council denied his request for review on April 24, 2020. R. 1–4.

## ANALYSIS

Bryan alleges that the ALJ failed to properly consider medical opinions, assess his mental impairments, determine his RFC using a function-by-function analysis, and assess his allegations regarding his symptoms. Bryan reports a learning disability and claims he suffered memory and other cognitive issues at least in part due to injuries sustained in a 1996 motorcycle accident. Pl.'s Br. at 20, Dkt. 16. Bryan also suffers from several physical conditions, most notably a history of heart attacks and back pain.

### A. Medical History Overview

1. <u>Mental Treatment</u>

Bryan reports a history of a learning disability. R. 449, 507. His academic records show that he was involved in the mainstream academic curriculum. R. 449. In 1996, well before his alleged onset date, Bryan had a motorcycle accident, which he believes resulted in memory and other cognitive issues. R. 502. Documents from that accident show altered mental status but no intracranial injury. <u>Id.</u> Records from a 2015 MRI were unremarkable. R. 503.

Bryan saw his general practitioner, Victor Bell, M.D., several times a year for mental health treatment. R. 510–76, 577–98, 609–19, 680–83, 687–90. At various points throughout his treatment, Dr. Bell diagnosed Bryan with grief reaction, major depressive disorder, history of closed head injury, memory impairment, and cognitive changes. <u>See</u> R. 517, 520, 525, 591, 594. Dr. Bell regularly noted that Bryan had some level of "cognitive slowing," but stated he did not know Bryan's baseline prior to his injury. R. 519. At his 2018 appointments, Dr. Bell infrequently described Bryan's mental status, only occasionally noting that he was "alert and oriented but there does seem to be some cognitive slowing." <u>See</u> R. 609–610, 680–82 (no mention of mental state); R. 612, 614 (sparse discussion of mental state). Throughout Bryan's treatment Dr. Bell treated Bryan's mental symptoms with some medication and occasionally supportive therapy. <u>See</u>, <u>e.g.</u>, R. 517, 520.

Dr. Bell referred Bryan for a neuropsychological evaluation in 2016. R. 525. Bryan eventually participated in two sessions with Ann Sollinger, Ph.D., in February and March 2017. R. 491–507. Dr. Sollinger found minimal senescent changes and an unremarkable MRI. R. 504. She performed a battery of tests, where Bryan often scored in the impaired range. R. 506. Dr. Sollinger reported that Bryan was frustrated during the test, which made it difficult to confirm

impairments, but that Bryan has several risk factors for impairment. R. 507. She stated that the
"results were generally much lower than expected based on his reported daily level of
functioning" and that "[p]rogressive cognitive deficits, such as those reported by [Bryan], would
be atypical for remote TBI." Id. She ultimately recommended further testing. Id.

   2. Physical Treatment

     Bryan treated several times a year with his general practitioner, Dr. Bell, for general
treatment.[7] R. 510–76, 577–98, 609–19, 680–83, 687–90. Bryan began complaining of back pain
before his alleged onset date. R. 443, 529, 533, 539, 534, 543, 547. Dr. Bell treated Bryan's back
pain with pain medication. See, e.g., 544, 548. Dr. Bell referred him for x-rays, which showed
mild degenerative changes and scoliatic curvature and referred him for physical therapy. R. 443,
455, 485–87, 540. In September 2016, Dr. Bell diagnosed Bryan with facet arthritis of the
lumbosacral region and adolescent idiopathic scoliosis of the lumbar region and continued Bryan
on pain relief medications.[8] R. 522–23. Bryan attended several appointments in 2017 where Dr.
Bell continued Bryan on the same treatment plan. In November 2017, Dr. Bell found flattened
lordosis, significant rib humping, prominence of the lumbar paraspinous musculature,
tenderness, and decreased forward flexion. R. 594. Dr. Bell kept Bryan on his current pain
management regimen. Id. Bryan followed-up in February 2018 and, despite noting pain in his
back, he stated that his pain is moderately well controlled with his current medication. R. 582.
He again reported pain in November 2018, but, again, noted that his back pain was moderately
well controlled. R. 680.

---

   [7] Dr. Bell also treated Bryan's diabetes, hyperlipidemia, and other acute medical issues.

   [8] Dr. Bell's notes include assessments for each appointment. Though the exact diagnoses sometimes differ,
the medication regimen to treat Bryan's back pain was relatively consistent.

Bryan suffered heart attacks in 2011, 2012, and 2017. Bryan had a successful stent implantation after each heart attack. R. 280. After his 2017 heart attack, Bryan followed-up with Stephen Schutzman, M.D., who noted that Bryan reported that he was doing well, except for some fatigue. R. 601. Dr. Schutzman reported that Bryan denied chest pain and issues with his medication. Id. Bryan followed up with Dr. Schutzman in September 2018 and similarly reported that he was "doing okay and denie[d] any immediate complaints," including with his medication. R. 621.

3.  Medical Opinions

In August 2014, before Bryan's alleged onset date, Jeffrey Luckett, Ph.D., performed a consultative psychological evaluation. R. 448–52. Dr. Luckett found that Bryan had mild depression and noted that behaviorally, Bryan was oriented and that his thoughts were logical and linear. R. 450–51. He noted that Bryan "show[ed] some mild memory difficulties based on his own explanation, [but he] showed no difficulty in being able to answer the majority of [the interview] questions." R. 451. He also found that Bryan generally did well in a cognitive screening examination, but he had some problems with a serial 7s task and listing presidents. Id. Ultimately, Dr. Luckett concluded that "from a psychological standpoint, [Bryan] would be able to perform simple and repetitive tasks without difficulty. He would be able to maintain regular attendance in the workplace and work on a consistent basis. He would not require special or additional supervision." R. 452. The ALJ found Dr. Luckett's opinion persuasive. R. 27.

State agency physician James Darden, M.D., reviewed the record in November 2017 and found Bryan capable of light work, with certain postural and environmental limitations. R. 82, 85–87. Specifically, Dr. Darden noted that Bryan was capable of either standing and sitting for six hours and could occasionally engage in postural activities, e.g. climbing, stooping, kneeling,

and crawling. The ALJ found Dr. Darden's opinion persuasive. R. 27. State agency psychologist

Leslie Montgomery, Ph.D., also reviewed the record in November 2017 and noted a number of

mental limitations, but concluded that Bryan "would be able to maintain concentration and

attention for two hour periods in order to complete an eight hour day" and that he could "recall

short and simple instructions." R. 88. The ALJ found Dr. Montgomery's opinion persuasive.

R. 27. On reconsideration in March 2018, state agency doctor Richard Surrusco, M.D., agreed

and found the same limitations identified by Dr. Darden. R. 105. State agency psychologist,

Patricia Bruner, Ph.D., reached similar conclusions. R. 106–07. The ALJ found Dr. Bruner's

opinion persuasive. R. 27.

### B.  Medical Opinions

Bryan argues that the ALJ erred in finding the opinions of Dr. Luckett and the state

agency psychologists persuasive. Pl.'s Br. at 23–24, Dkt. 16. Specifically, Bryan states that the

ALJ's medical opinion analysis ignored Dr. Sollinger's neuropsychological evaluation and other

evidence in the record. Id.

Because Bryan filed his application in July 2017, 20 C.F.R. §§ 404.1520c governs how

the ALJ considered the medical opinions in his case.[9] That regulation provides that the ALJ "will

not defer or give any specific evidentiary weight, including controlling weight, to any medical

opinion(s) or prior administrative medical finding(s), including those from [claimant's] medical

sources." 20 C.F.R. §§ 404.1520c(a), 416.920c(a). In evaluating the persuasiveness of medical

opinions and prior administrative medical findings, the most important factors considered are

supportability and consistency.[10] Id. "Other than articulating his consideration of the

---

[9] 20 C.F.R. §§ 401.1520c, 416.920c applies to claims filed on or after March 27, 2017.

[10] "Supportability" means "[t]he extent to which a medical source's opinion is supported by relevant
objective medical evidence and the source's supporting explanation." Revisions to Rules, 82 Fed. Reg. at 5853; see

supportability and consistency factors, the Commissioner is not required to discuss or explain

how he considered any other factor in determining persuasiveness." Freyhagen v. Comm'r, 2019

WL 4686800, at *2 (M.D. Fla. Sept. 26, 2019) (quoting Mudge v. Saul, 2019 WL 3412616, at *4

(E.D. Mo. July 29, 2019)). However, when "medical opinions or prior administrative medical

findings about the same issue are equally well–supported . . . and consistent with the record," the

Commissioner will articulate how he considered the following factors: the medical source's

relationship with the claimant, specialization, and other factors that tend to support or contradict

a medical opinion. 20 C.F.R. §§ 404.1520c(b)(3).

As a preliminary matter, Bryan argues that the ALJ ignored Dr. Sollinger's medical

"opinion." Pl.'s Br. at 24, Dkt. 16. Dr. Sollinger's treatment notes do not qualify as a medical

opinion under the new regulations. See 20 C.F.R. § 404.1513. There are five categories of

evidence under the new regulations: (1) objective medical evidence, (2) medical opinion, (3)

other medical evidence, (4) evidence from non-medical sources, and (5) prior administrative

medical findings. Id. Medical opinion evidence "is a statement from a medical source about what

you can still do despite your impairment(s) and whether you have one or more impairment-

related limitations or restrictions in [certain] abilities." Id. Dr. Sollinger's evaluation does not

describe what Bryan can do despite his impairments and does not reference his ability or

inability to work. 502–07. Under the prior regulations, several courts held that there is no

reversible error when an ALJ does not determine the persuasiveness of evidence "which fails to

reflect what limitations plaintiff's ailments have on that plaintiff's ability to work."

Hollingsworth v. Comm'r, No. 2:18–cv–573, 2020 WL 1027447, at *9 (M.D. Fla. Jan. 30,

---

also 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1). "Consistency" denotes "the extent to which the opinion is
consistent with the evidence from other medical sources and nonmedical sources in the claim." Revisions to Rules,
82 Fed. Reg. at 5853; see also 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2).

2020); Mary R. v. Saul, No. 3:19–cv–903, 2021 WL 388463 at * 8–9 (E.D. Va. Jan. 19, 2021).

Instead, Dr. Sollinger's treatment notes are more appropriately categorized as other medical

evidence, which includes "judgments about the nature and severity of [a claimant's]

impairments, [] medical history, clinical findings, diagnosis, treatment prescribed with response,

or prognosis." 20 C.F.R. § 404.1513. Moreover, the ALJ did not ignore Dr. Sollinger's treatment

notes. He described the treatment notes in his review of the medical evidence and referenced Dr.

Sollinger's conclusion in his analysis. See R. 20, 24, 27.

Here, the ALJ appropriately considered the factors and the record in determining the

persuasiveness of the state agency psychologists' medical opinions. The ALJ noted their basic

conclusions and specifically noted that the opinions were "consistent with and supported by the

record." R. 27. The ALJ further explained that despite some inconsistent evidence, namely

Bryan's subjective allegations and Dr. Bell's treatment notes reporting cognitive slowing, that

the state agency psychologists' conclusion that Bryan had moderate limitations in concentrating,

persisting, or maintaining pace and understanding, remembering, or applying information was

supported by other evidence in the record, namely control of depressive symptoms through

medication, treating physician notes that Bryan exhibited normal behavior, and Bryan's

functional abilities, including his ability to care for his own personal needs. The ALJ additionally

cited Dr. Sollinger's neuropsychological exam, which was inconclusive, but strongly suggested

that his scores were lower than expected given his reports and that progressive cognitive deficits

would be atypical for someone with Bryan's history.

The ALJ also adequately considered Dr. Luckett's opinion. The ALJ similarly noted that

despite Bryan's subjective allegations and some reports to the contrary, Bryan's functional

abilities suggested he would be able to perform simple and repetitive tasks. R. 27. The ALJ also

noted that Dr. Luckett's conclusions were supported by his own findings that Bryan exhibited

normal behavior, was a good historian, and performed well on the Cognitive Capacity Screening

Examination. Id.

Bryan argues that the ALJ's consideration of Dr. Luckett's opinion is not supported by

substantial evidence, suggesting that it was authored prior to Dr. Sollinger's treatment notes.

Pl.'s Br. at 24, Dkt. 16. As described above, Dr. Sollinger's treatment notes do not constitute a

medical opinion. Additionally, while Dr. Luckett's opinion was authored prior to Bryan's alleged

onset date, the ALJ did not err in considering it. See 20 C.F.R. § 404.1520c(b) ("We will

articulate in our determination or decision how persuasive we find *all* of the medical opinions . . .

in your case record") (emphasis added); see also Simmons v. Berryhill, No. 0:16–3442, 2018

WL 3104279, at *7–8 (D.S.C. Jan. 16, 2018) (finding no error where ALJ relied on medical

opinions predating his amended alleged onset date); Cunningham v. Berryhill, No. 5:17–cv–301,

2018 WL 6731380, at *4 (E.D.N.C. Nov. 19, 2018) (stating ALJ needed to consider medical

opinion issued before claimant's alleged onset date).

The ALJ's finding that Dr. Luckett and the state agency psychologists' opinions are

persuasive is supported by substantial evidence. See Healer v. Saul, SA–19–cv–01497, 2020 WL

7074418, at *10 (W.D. Tex. Dec. 30, 2020) ("Although the ALJ's discussion of the medical

opinions was brief . . . he nonetheless explained whether he found the opinion to be supported by

and consistent with the medical and other objective evidence and explained ultimately why he

found the opinion to be persuasive"). Bryan's citations to contradictory statements in the medical

records amounts to his impermissibly asking the court to reweigh the evidence. See Harper v.

Comm'r, No. GLR–13–909, 2014 WL 176777, at *1–2 (D. Md. Jan. 14, 2014) (stating that a

court may not reweigh the evidence or substitute its judgment for the ALJ when the ALJ

provides substantial evidence to undermine the allegations in a treating physician's opinion).

### C.  Mental Impairments Under SSR 96–8P

Bryan argues that the ALJ failed to properly assess his mental impairments as required by

SSR 96–8P. See Titles II & Xvi: Assessing Residual Functional Capacity in Initial Claims, SSR

96–8P (S.S.A. July 2, 1996). Specifically, Bryan asserts that the ALJ failed to properly consider

his moderate limitations in adapting or managing oneself, concentration, persistence, or pace and

understanding, remembering, and applying information by "only address[ing] the skill of work

and . . . not [Bryan's] ability to sustain work activity over the course of an eight-hour workday.

Pl.'s Br. at 17, Dkt. 16.

SSR 96–8P requires the ALJ to include a narrative discussion describing how the

evidence supports his conclusions when developing the RFC. Teague v. Astrue, No. 1:10-cv-

2767, 2011 WL 7446754, at *8 (D.S.C. Dec. 5, 2011).  The ALJ "must include a narrative

discussion describing how the evidence supports each conclusion, citing specific medical facts

(e.g., laboratory findings) and nonmedical evidence (e.g., daily activities, observations)." SSR

96-8P at *7; Meadows v. Astrue, No. 5:11-cv-63, 2012 WL 3542536, at *8 (W.D. Va. Aug. 15,

2012) (citing Davis v. Astrue, No. 9-cv-2545, 2010 WL 5237850, at *5 (D. Md. Dec. 15, 2010));

Monroe v. Colvin, 826 F.3d 176, 189, (4th Cir. 2016) (emphasizing that the ALJ must "build an

accurate and logical bridge from the evidence to his conclusion" and holding that remand was

appropriate when the ALJ failed to make "specific findings" about whether the claimant's

limitations would cause him to experience his claimed symptoms during work and if so, how

often).

In <u>Shinaberry v. Saul</u>, the Fourth Circuit clarifies that an "ALJ cannot summarily 'account for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work,' because 'the ability to perform simple tasks differs from the ability to stay on task.'" <u>Shinaberry v. Saul</u>, No. 18-2096, 2020 WL 908887, at *4 (4th Cir. Feb. 26, 2020) (quoting <u>Mascio v. Colvin</u>, 780 F.3d 632, 638 (4th Cir. 2015)). However, <u>Mascio</u> does "not impose a categorical rule that requires an ALJ to always include moderate limitations in concentration, persistence, or pace as a specific limitation in the RFC." <u>Shinaberry</u>, 2020 WL 908887, at *4. In contrast, <u>Shinaberry</u> highlights "sister circuits" who conclude that "limiting the hypothetical to include only unskilled work sufficiently accounts for such limitations [in concentration, persistence, or pace]" when the "medical evidence demonstrates that a claimant can engage in simple, routine tasks, or unskilled work, despite [these] limitations." <u>Id.</u> (quoting <u>Winschel v. Comm'r of Soc. Sec.</u>, 631 F.3d 1176, 1180 (11th Cir. 2011)). <u>Shinaberry</u> further confirms that <u>Mascio</u> does not broadly dictate that a claimant's moderate impairment in concentration, persistence, or pace always translates into a limitation in the RFC, but instead underscores the ALJ's duty to adequately review the evidence and explain the decision. <u>See also</u> <u>Monroe</u>, 826 F.3d 176 (emphasizing that the ALJ must provide a sound basis for his ruling, including discussing what evidence he found credible and specifically applying the law to the record).

This is not a situation like <u>Mascio</u>, where the ALJ summarily concluded that a limitation to simple, unskilled work accounts for the claimant's moderate impairment in concentration, persistence, and pace without further analysis. Unlike the claimant in <u>Mascio</u>, the medical evidence here supports the ALJ's conclusion that, despite his moderate limitations in concentration, persistence, or pace, Bryan can perform the basic mental demands of light work,

with the specified accommodations. Further, the ALJ explained why Bryan's moderate

limitations in concentration, persistence, or pace and understanding, remembering, or applying

information, did not translate into a limitation in the RFC beyond "[h]e can understand,

remember, and carry out simple instructions and perform simple tasks." R. 22.

As a preliminary matter, contrary to Bryan's argument, the ALJ adequately supported his

finding that Bryan could sustain work activity over the course of an eight-hour workday, and

accounted for Bryan's moderate impairments in his hypothetical questions to the vocational

expert and the RFC finding in his ruling.[11] See Pl.'s Br. at 17–19. The ALJ found that Bryan had

moderate impairments in concentration, persistence, or pace, noting that "this area of functioning

concerns actions that demonstrate the ability to focus attention on work activities and stay on

task at a sustained rate." R. 21. The ALJ acknowledged Bryan's testimony that "he could pay

attention for two to three minutes" and Dr. Bell's treatment notes, which noted some cognitive

slowing. R. 21, 23. Dr. Bell's treatment notes sporadically note that Bryan's concentration is

"worsening." See R. 516, 593 ("concentration worsening"). It is unclear whether these

statements are based on Dr. Bell's assessment or Bryan's subjective allegations.  Nevertheless,

the ALJ noted that Bryan generally did not complain to treating practitioners of serious difficulty

maintaining concentration, persistence, and pace and that his treating providers "did not suggest

that "[Bryan] was overly distractible." R. 10; see, e.g., R. 517 ("Concentration/Task

---

[11] The ALJ asked the VE to consider "an individual of the claimant's age, education, and work experience who . . . is able to understand, remember and carry out simple instructions and perform simple tasks." R. 54. Substantial evidence supports the ALJ's development of Bryan's RFC as discussed below. The ALJ is not required to pose hypothetical questions to the vocational expert relating to impairments not supported by the record. See Fisher v. Barnhart, 181 Fed. App'x 359, 364 (4th Cir. 2006) (citing Johnson v. Barnhart, 434 F.3d 650, 659 (4th Cir. 2005)) ("[A] hypothetical question is unimpeachable if it 'adequately reflect[s]' a residual functional capacity for which the ALJ had sufficient evidence."); Walker v. Bowen, 889 F.2d 47, 50 (4th Cir. 1989) (stating vocational expert's opinion must be in response to hypothetical questions that "fairly set out all of claimant's impairments").

Performance[:] patient is able to concentrate and stays focused in the encounter"); R. 27, 451 (describing Bryan as a good historian).

The ALJ noted that Bryan's mental symptoms, namely depression, were controlled by medication. See R. 21, 27; R. 522, 582, 593, 611 (negative depression screenings). The ALJ also emphasized that Bryan's activities of daily living suggested no more than a moderate limitation in this domain, and thus, a limitation to simple tasks was appropriate. R. 21. The ALJ found both state agency psychologists' opinions persuasive, finding them consistent with the record. R. 26–27. The state agency psychologists both found that despite having a moderate impairment in concentration, persistence, and pace that "[Bryan] would be able to maintain concentration and attention for two-hour periods in order to complete an eight-hour day. He would be able to complete a normal work week and to perform at a pace generally consistent with others, with only minimal need for accommodations on an infrequent basis." R. 88. Likewise, the ALJ found Dr. Luckett's opinion persuasive, including his finding that "[Bryan] could perform simple and repetitive tasks without difficulty, stating the claimant could maintain regular attendance and would not require special supervision." R.27. The ALJ specifically cited Dr. Luckett's reports that Bryan scored well on the Cognitive Capacity Screening Examination, scoring 26 out of 30 correctly, and that he had "logical and linear" thoughts. R. 27.

Bryan further argues that the ALJ failed to specifically describe his ability to sustain work over an eight-hour day and failed to explain his finding that Bryan is expected to be off task less than 10 percent of the workday. Bryan points to no specific evidence to support these claims. Regarding his ability to sustain work, the ALJ found that despite Bryan's testimony, he did not regularly complain to his treating physician about being distractable. R. 10; see, e.g., R. 517. The ALJ also emphasized that Bryan engages in activities of daily living that suggest an

15

ability to concentrate, persist, and maintain pace. R. 21. Finally, the ALJ found persuasive the opinions of Dr. Luckett and the state agency psychologists, all of whom suggested he could perform simple tasks without difficulty, and the state agency psychologists specifically addressed Bryan's pace, finding that he could maintain concentration and attention for two-hour periods to complete an eight hour day. R. 88. Regarding the ALJ's finding that Bryan will be off task less than 10 percent of the workday, the ALJ included this percentage in his Step Three analysis, where he discussed the same evidence mentioned above. See Richardson v. Berryhill, No. 5:15-CV-173-RJC-DSC, 2019 WL 1354042, at *3 (W.D.N.C. March 26, 2019) (because ALJ "provided ample discussion of how [a plaintiff's] mental impairments impact[ed] her ability to perform work-related tasks," RFC that limited a plaintiff to a nonproduction pace passed muster "because the ALJ contextualized and explained how he reached his conclusion[.]").

Bryan also argues that the ALJ failed to explain how the RFC accommodates his moderate limitations in understanding, remembering, or applying information. The ALJ noted that "this area refers to an individual's ability to learn, recall, and use information to perform work activities." R. 20. While the ALJ acknowledged Bryan's subjective complaints that he experienced short-term memory loss and Dr. Bell's occasional reports that Bryan had a poor memory, he concluded that Bryan's moderate limitations would not prevent him from working, and that Bryan was capable of "understand[ing], remember[ing], and carry[ing] out simple instructions and perform[ing] simple tasks." R. 22. The ALJ also considered Dr. Sollinger's neuropsychological evaluation, considering both Bryan's low scores on several assessments and Dr. Sollinger's note that progressive cognitive deficits from a remote traumatic brain injury would be atypical and that Bryan's scores were much lower than expected based on his description of activities of daily living. R. 20. The ALJ also noted that Bryan's mental status

16

reports generally showed no serious deficits in insight or judgment and that his treating

physicians reported he "was able to give a good history of his medical and mental health

history." R. 20; see R. 525, 632 (mental status exams). The ALJ also specifically described

Bryan's activities of daily living, noting that "[he] reported performing normal necessary

household activities, such as cooking, cleaning, and shopping, which require a basic level of

understanding, remembering, and applying information." R. 20. The ALJ found both state

agency psychologists' opinions persuasive, finding them consistent with the record. R. 26–27.

The state agency psychologists both found that despite having a moderate impairment in

understanding, remembering, and applying information that Bryan "would be able to recall short

and simple instructions." R. 88, 106. Similarly, the ALJ found Dr. Luckett's opinion persuasive,

including his report that his "[t]houghts were logical and linear, and [Bryan] was a good

historian." R. 27.

Bryan asserts that the ALJ failed to explain how his mild limitations in adapting or

managing oneself is accommodated by the ALJ's RFC. See Pl.'s Br. at 19, 23, Dkt. 16. However,

Bryan provides no argument to support this claim. Id. I find that the ALJ adequately explained

and accommodated Bryan's mild limitation in adapting or managing oneself. The ALJ

acknowledged Bryan's report that he did not handle stress and changes in routine well. R. 23.

However, the ALJ noted that "treating practitioners generally noted that he had no deficiencies in

hygiene and wore appropriate attire, did not have serious problems being aware of normal

hazards, and had no problems with independently making plans, setting goals, and handling his

own activities of daily living without significant assistance." R. 21, 27; see, e.g., R. 214–20, 503

(activities of daily living); 451, 517 (hygiene, grooming, or attire described as adequate).

Additionally, both the state agency psychologists determined that Bryan had mild limitations in

adapting or managing himself, and found no need for specific accommodations. R. 84, 102. The

ALJ found the state agency psychologists' opinions persuasive. R. 27.

The ALJ's reasoning is supported by the opinions of the consultative examiner and state

agency psychologists and the ALJ's consideration of the record. This court is not "left to guess

about how the ALJ arrived at his conclusions." Mascio, 780 F.3d at 637. As such, I conclude that

substantial evidence supports the ALJ's conclusions regarding Bryan's RFC.

### D.  Physical RFC and Function-by-Function Analysis

Bryan argues that the ALJ's physical RFC findings are not supported by substantial

evidence, specifically regarding "whether [his] impairments would result in limitations in his

ability to sit or stand or result in his need to lie down during the day." Pl.'s Br. at 26, Dkt. 16.

Bryan also asserts that the ALJ "ignored evidence contrary to his findings in his decision,"

namely evidence regarding Bryan's coronary artery disease and lumbar spondylosis. However,

Bryan does not point to any specific records to support a need to lie down or other limitations

regarding his ability to sit or stand, aside from his own testimony. Bryan's argument amounts to

a disagreement with the ALJ's RFC determination and essentially asks the court to reweigh the

evidence.

A function-by-function analysis requires the ALJ to develop an adequate RFC which

accounts for the work activities the claimant can perform given the physical or mental

impairments affecting his ability to work.  Importantly, the ALJ must explain the conclusions

reached and explain any record evidence which contradicts the RFC determination. See SSR 96-

8p; see also Monroe v. Colvin, 826 F.3d 176, 189 (4th Cir. 2016) (emphasizing that an ALJ

needs to provide an explicit explanation linking medical evidence listed in the decision to his

ultimate findings). The ALJ is instructed to cite specific medical facts and non-medical evidence

supporting his conclusion, discuss the individual's ability to perform sustained work activities in an ordinary work setting on a regular and continuing basis, describe the maximum amount of each work-related activity the individual can perform, and explain how any material inconsistencies or ambiguities in the evidence were considered and resolved. SSR 96-8p, 1996 WL 374184, at *7.

In Mascio v. Colvin, the court rejected a "per se rule requiring remand when the ALJ does not perform an explicit function-by-function analysis," agreeing instead with the Second Circuit that "'[r]emand may be appropriate ... where an ALJ fails to assess a claimant's capacity to perform relevant functions, despite contradictory evidence in the record, or where other inadequacies in the ALJ's analysis frustrate meaningful review.'" Mascio, 780 F.3d at 636 (citing Cichocki v. Astrue, 729 F.3d 172, 177 (2d Cir. 2013)). "The Mascio Court held remand was necessary, in part, because the ALJ failed to indicate the weight given to two residual functional capacity assessments which contained relevant conflicting evidence regarding the claimant's weight lifting abilities." Newcomb v. Colvin, No. 2:14–CV–76, 2015 WL 1954541, at *3 (N.D.W. Va. Apr. 29, 2015).

Here, the ALJ's decision includes the narrative discussion required by SSR 96–8P and it contains sufficient information to allow meaningful review. Contrary to Bryan's claim, the ALJ did not fail to consider conflicting medical evidence about Bryan's coronary artery disease or his lumbar spondylosis. Pl.'s Br. at 25, Dkt. 16. Specifically, Bryan noted that "although [he] suffered [heart attacks] in May 2011, July 2012, and August [] 2017, the ALJ only references [his] [August 2017 heart attack]." The ALJ noted that Bryan suffered multiple heart attacks before the alleged onset date. See R. 26–27 ("[Bryan] also has a history of coronary artery disease with his most recent heart attack in August 2017"; "[w]hile the prior decision was issued

a short time before [Bryan] filed this application for benefits, [he] had a third heart attack").

Bryan does not provide any specific argument regarding how his two prior heart attacks should

impact the RFC. See Green v. Saul, No. 1:19–2793, 2020 WL 4507129 (D.S.C. July 27, 2020)

(rejecting argument that ALJ ignored evidence, especially when claimant failed to cite evidence

supporting a change in the RFC assessment). Moreover, an ALJ need not single out for

discussion every piece of evidence in the record. See Rayonda P. v. Berryhill, No. 7:18–cv–190,

2019 WL 3242078, at *6 (W.D. Va. May 24, 2019) (stating that the ALJ is under no duty to

explicitly refer to each exhibit). Nevertheless, the ALJ did consider Bryan's heart attacks, noting

that he reported good benefits from his medication and that "his medications allowed a fairly

normal activity level, including doing chores." R. 25, 27.

Similarly, the ALJ addressed Bryan's lumbar spondylosis. See R. 23–27. The ALJ

described Bryan's treatment with Dr. Bell and referenced his findings and Bryan's medication

regimen. R. 23. Further, in discussing the state agency physicians' opinions, the ALJ noted

contrary evidence, including "mild degenerative disc disease and scoliosis, flattening lordosis,

rib humping at the left thorax, tenderness, and a slightly decreased range of motion. R. 27. The

ALJ also provided some analysis noting that Bryan reported good benefit from his consistent

medication regimen, and that Bryan engaged in a fairly normal activity level. R. 24, 27. He

further noted that Bryan maintained a normal gait and remained neurologically intact. R. 25, 27.

Bryan also contends that the ALJ failed to address his limitations in sitting and standing,

his need to lie down during the day, and his general pain and fatigue.[12] R. 26. The ALJ

---

[12] Bryan also notes that he develops shortness of breath a couple of times a day. Bryan does not suggest
how this would support changes to the RFC. The ALJ identified this complaint and described in his analysis of
Bryan's subjective complaints that despite general complaints of fatigue and intermittent pain, Bryan is still capable
of sustained work activity, relying on his consistent engagement in active chores despite his medical condition.
R. 23, 24, 27.

acknowledged each of these symptoms in his overview of Bryan's hearing testimony. R. 23. Regarding general fatigue, the ALJ noted that Bryan generally not complain to treating providers of issues concentrating, persisting, or maintaining pace. R. 21. More generally, the ALJ repeatedly noted that Bryan engaged in multiple activities of daily living, including assisting a friend with his work, preparing simple meals, driving, shopping, and completing several chores, e.g. washing clothes and dishes, mopping, taking out the trash, and mowing the lawn. R. 23–25. Other than his testimony, Bryan pointed to no specific medical evidence supporting his limitations in sitting or standing or a need to lie down, and the ALJ noted several specific instances in the record suggesting that the ALJ's restriction to light work with certain limitations adequately accommodated Bryan's symptoms. See R. 27 (Bryan's report to his treating physician that his medications allow him to maintain a fairly normal activity level); R. 23 (Bryan's hearing testimony that he spent his day sitting around or walking in the yard picking up tree limbs); R. 25 (reporting ability to do chores, specifically mow the grass, despite feelings of fatigue).

### E.  Subjective Allegations

Bryan argues that the ALJ's assessment of his allegations is not supported by substantial evidence. Specifically, Bryan complains that "he experiences drowsiness as a side-effect of prescription medication, but the ALJ never evaluates or analyzes this allegation in his decision." Pl.'s Br. at 28, Dkt. 16. Bryan points to his own testimony, but otherwise cites to no evidence in the record to support his claim. Pl.'s Br. at 2, Dkt. 16; see R. 44.

When evaluating a claimant's symptoms, ALJs must use the two-step framework set forth in 20 C.F.R. § 404.1529 and SSR 16-3p, 2016 WL 1119029 (Mar. 16, 2016). First, the ALJ must determine whether objective medical evidence presents a "medically determinable impairment" that could reasonably be expected to produce the claimant's alleged symptoms. 20

C.F.R. § 404.1529(b); SSR 16-3p, 2016 WL 1119029, at *3. Second, after finding a medically

determinable impairment, the ALJ must assess the intensity and persistence of the alleged

symptoms to determine how they affect the claimant's ability to work and whether the claimant

is disabled. See 20 C.F.R. § 404.1529(c); SSR 16-3p, 2016 WL 1119029, at *4. "At this step,

objective evidence is *not* required to find the claimant disabled." Arakas, 983 F.3d 83, 95 (4th

Cir. 2020) (emphasis in the original) (citing SSR 16-3p, 2016 WL 1119029, at *4–5). SSR 16-3p

recognizes that "[s]ymptoms cannot always be measured objectively through clinical or

laboratory diagnostic techniques." Id. at *4. Thus, the ALJ must consider the entire case record

and may "not disregard an individual's statements about the intensity, persistence, and limiting

effects of symptoms solely because the objective medical evidence does not substantiate" them.

Id. at *5.

Bryan initially argues that the "[t]he ALJ recited some of [his] allegations but never

actually addressed or evaluated plaintiff's allegations. The only paragraph in the RFC section of

the decision that can reasonably be assumed to represent an evaluation of plaintiff's allegations is

the sixth paragraph on page 10 of the ALJ's decision." While the ALJ's analysis is admittedly

limited, the ALJ does specifically address Bryan's subjective allegations after considering the

medical evidence. See R. 27; see also Akers v. Berryhill, 2018 WL 2670414 ("While the ALJ

made this statement during the step-three determination, it makes it abundantly clear to the Court

that the ALJ used the activities discussed in that section to determine Akers' credibility.").

Here the ALJ held that Bryan's statements about the intensity, persistence, and limiting

effects of his symptoms are inconsistent with the record. R. 25. Reading the opinion as a whole,

the ALJ provided sufficient analysis to support this conclusion. The ALJ noted that after Bryan

was terminated from his employment that he helped a friend at his work. R. 27, 505 (stating after

22

accident Bryan "worked odd jobs . . . [f]or the last year he was helping a friend at his work").

Similarly, the ALJ pointed to Bryan's activities of daily living. R. 27; see also R. 20–21, 23, 25

(describing activities of daily living, including preparing simple meals, driving, shopping, and

completing several chores, e.g. washing clothes and dishes, mopping, taking out the trash, and

mowing the lawn). He also noted that Bryan completes these tasks without any significant

assistance. R. 21.

Further, other than Bryan's hearing testimony, he cited no evidence in the record (either

subjective or objective) to support his claim about drowsiness as a side-effect of medication.

There is no indication that Bryan complained of this issue to his treating physicians, and the

ALJ's medical evidence summary described an instance where Bryan reported no side effects

from his medication. R. 25; See, e.g., 621–22. See Zeiler v. Barnhart, 384 F.3d 932, 936 (8th Cir.

2004) (ALJ did not err in not considering side effect when claimant had never complained of

such to her doctors); Pyzer v. Berryhill, No. 4:17–cv–3094, 2018 WL 4471723, at *4 (D. Neb.

Sept. 18, 2018) (finding no error where, although claimant testified to drowsiness from

medications, ALJ did not discuss medication side effects because claimant never complained to

her physicians about any side effects"); Rathfon v. Comm'r, No. 1:15–cv–466, 2016 WL

1604599, at *9 (W.D. Mich. Apr. 22, 2016) (finding substantial evidence where ALJ discounted

Plaintiff's subjective allegations based in part on failure to complain of symptoms elsewhere in

the record).

Here, the ALJ provided sufficient support for his analysis of Bryan's subjective

complaints. It is for the ALJ to determine the facts of a particular case and to resolve

inconsistencies between a claimant's alleged impairments and his ability to work. See Smith v.

Chater, 99 F.3d 635, 638 (4th Cir. 1996); see also Shively v. Heckler, 739 F.2d 987, 989-90 (4th

Cir. 1984) (finding that because the ALJ had the opportunity to observe the demeanor and to

determine the credibility of the claimant, the ALJ's observations concerning these questions are

to be given great weight). I conclude that the ALJ supported his analysis of Bryan's subjective

complaints with substantial evidence, and that Bryan can perform work at the level stated in the

ALJ's opinion.

## **CONCLUSION**

For the foregoing reasons, I **RECOMMEND GRANTING** the Commissioner's Motion

for Summary Judgment and **DENYING** Bryan's Motion for Summary Judgment.

The Clerk is directed to transmit the record in this case to Elizabeth K. Dillon, United

States District Judge, and to provide copies of this Report and Recommendation to counsel of

record. Both sides are reminded that pursuant to Rule 72(b), they are entitled to note any

objections to this Report and Recommendation which must be filed within fourteen (14) days

hereof. Any adjudication of fact or conclusion of law rendered herein by me that is not

specifically objected to within the period prescribed by law may become conclusive upon the

parties. Failure to file specific objections pursuant to 28 U.S.C. § 636(b)(1) as to factual

recitations or findings as well as to the conclusion reached by me may be construed by any

reviewing court as a waiver of such objections, including a waiver of the right to appeal.

Entered:  August 4, 2021

*Robert S. Ballou*

Robert S. Ballou
United States Magistrate Judge

24